**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                  No. Cr. 15-1517 JH

VICTOR HERNANDEZ-PENA,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

On September 9, 2016, Defendant Victor Hernandez-Pena filed a Motion for Severance of Counts (ECF No. 55), seeking to sever Count 1 from Counts 2 and 3 and Count 4 from Counts 2 and 3, thereby holding three separate trials. After considering the motion, briefs, and applicable legal authorities, the Court concludes that the motion should be denied.

## I.     FACTUAL BACKGROUND

The United States alleges that Defendant was a prolific drug trafficker of methamphetamine ("meth") and heroin in the Albuquerque area, using cell phones; various vehicles; scales, baggies, and other equipment for packaging; cash; and firearms and ammunition. United States' Resp. 2, ECF No. 66. The Government focuses on a five-month period in its Superseding Indictment. *See* Superseding Indictment, ECF No. 34.

In Count 1, the Government alleges that Defendant distributed 50 grams and more of meth on or about March 24, 2015, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). *Id.* at 1. The Government intends to present evidence that the Bernalillo County Sheriff's Office ("BCSO") conducted a controlled purchase of meth using Confidential Informant 2 ("CI-2") who

used recorded cellular phone calls to arrange the purchase, who met Defendant in the area of Tennessee St. and Chico Rd. in Albuquerque, and who Defendant picked up in a white Impala. United States' Resp. 3-4, ECF No. 66. The United States proffers that officers conducted surveillance of the Impala, which was recorded on video. *Id.* at 4.

Counts 2 and 3 arise from the execution of a search warrant of Defendant's residence on April 2, 2015, in which the Government contends it found four scales, ledger paper, baggies, seven cell phones, various sizes of ammunition, an AR-15 missing the bolt with two magazines, meth and heroin, and a case containing more ammunition, magazines, scales, and baggies. United States' Resp. 4, ECF No. 66. The Government alleges that during the execution of the warrant, law enforcement officers found Defendant and his then-girlfriend, "VO", together in a bedroom of the apartment, and Defendant was arrested. *Id.* The Government asserts that the white Impala used in Count 1 was registered to VO. *Id.* at 6-7. The Government charges in Count 2 that Defendant possessed with intent to distribute 50 grams and more of meth on or about April 2, 2015, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Superseding Indictment 1-2, ECF No. 34. In Count 3, the United States asserts Defendant was an alien illegally in the United States who knowingly possessed ammunition, specifically 41 Remington brand, one Winchester brand, and one Federal brand .223 Remington caliber cartridges, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). *Id.* at 2.

Count 4 charges Defendant with being an illegal alien who knowingly and unlawfully possessed a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2), on or about November 10, 2014, approximately four-and-one-half months prior to the events charged in Counts 1, 2, and 3. *See id.* To prove the offense charged in Count 4, the Government intends to present evidence that on November 9, 2014, Defendant used the car of his then-girlfriend,

Alejandra Gomez, to traffic narcotics in exchange for a handgun, which he carried in his waistband that day and the next. United States' Resp. 2-3, ECF No. 66. The Government proffers that on November 10, 2014, Defendant took the handgun to his meth source's residence and purchased meth for distribution; drove with Ms. Gomez to a parking lot where he sold meth to several individuals while the handgun was tucked into his waistband; and after Ms. Gomez attempted to drive the car away from him, Defendant struck her in the head with the handgun, causing a bullet to discharge and graze the side of her head. *Id.* at 3. The Government intends to present evidence that BCSO obtained a casing for that bullet, and that Ms. Gomez identified the handgun used against her in photographs discovered on one of Defendant's cell phones seized at his residence on April 2, 2015. *Id.*

On September 1, 2016, the United States filed a Notice of Intent to Introduce Evidence under Rule 404(b). Notice, ECF No. 53. The United States intends to offer testimony from Ms. Gomez about specific instances of drug use, possession, and trafficking by Defendant. *Id.* ¶ 1. Ms. Gomez will testify about Defendant's drug-trafficking practices, his use of drug code, and her identification of photographs of Defendant found at the residence searched in Counts 2 and 3. United States' Resp. 7, ECF No. 66. The Government also plans to present testimony from Albuquerque Police Department ("APD") Officer Jacob Grant regarding a January 27, 2014 "buy-bust" operation, in which Defendant drove a white car and sold meth and heroin to a confidential informant ("CI-1"). *See* Notice ¶ 2, ECF No. 53; United States' Resp. 2, ECF No. 66. The United States asserts that police arrested Defendant after CI-1 gave a signal; Defendant possessed the cash from the purchase and a scale; and a handgun was observed on the driver's side floorboard. United States' Resp. 2, ECF No. 66. Additionally, the Government intends to present evidence through BCSO Detectives Jacob Nance and Bradley Cooksey of a "buy-walk"

3

operation on March 4, 2015, in which CI-2 made a phone call to Defendant to arrange a meth purchase, CI-2 went to the location, and Defendant sold him meth in exchange for $120. Notice ¶ 3, ECF No. 53; United States' Resp. 3, ECF No. 66.

## II.   ANALYSIS

### A.  Joinder is Proper under Rule 8(a)

Rule 8(a) provides for joinder of offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Rule 8 'is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system.'" *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995) (quoting *United States v. Hopkinson*, 631 F.2d 665, 668 (10th Cir. 1980)). Defendant contends that Counts 1 and 4 are improperly joined with each other and with Counts 2 and 3.

Count 1 is a distribution of meth charge occurring only nine days before the charge of possessing meth with intent to distribute in Count 2. The evidence necessary to support Count 1 is relevant to the intent to distribute element necessary to prove Count 2. The evidence law enforcement obtained during the alleged transaction in Count 1 was presented to support the issuance of the search warrant that they executed on April 2, 2015. Law enforcement found the meth that is the basis of Count 2 during the same search in which they discovered the ammunition charged in Count 3, so Counts 2 and 3 are based on the same act or transaction or connected with or constitute parts of a common scheme or plan. *Cf. United States v. Burkley*, 513 F.3d 1183, 1188 (10th Cir. 2008) (concluding there was no error in denying severance of firearm and drug-trafficking counts because, even if they had been severed, evidence of defendant's firearm possession would have been admissible to prove his intent to distribute marijuana

4

because guns are "tools of the trade" of drug trafficking); *United States v. Cox*, 934 F.2d 1114, 1119 (10th Cir. 1991) (upholding court's refusal to sever firearm possession counts from drug trafficking counts, where  government demonstrated that defendant possessed the firearms as part of scheme or plan to possess and distribute drugs, and police seized both weapons and narcotics at the same time and place). Counts 1, 2, and 3 are therefore of similar character and connected with a common scheme or plan within the meaning of Rule 8(a).

Although Count 4 is separated in time from Counts 1, 2, and 3 by about four-and-one-half months, the events are sufficiently close in time to support joinder. *Cf. United States v. Cuch*, 842 F.2d 1173, 1177-78 (10th Cir. 1988) (explaining that there is no absolute rule regarding number of years that can separate offenses when deciding admissibility under Rule 404(b) and finding no error in admitting evidence of separate assault with gap of over seven years between offenses). The underlying facts proffered by the Government to support Count 4 indicate that Defendant used the firearm allegedly possessed therein as a tool to facilitate his alleged distribution of meth. The Government expects Ms. Gomez to testify that Defendant used the gun during drug deals on November 10, 2014. The United States additionally proffers that Ms. Gomez will testify that on that same day, she went with Defendant to the locations of his source of meth supply, which law enforcement will corroborate matches a location in which they observed Defendant. Evidence as to Count 4 is thus relevant to the element of Defendant's intent to distribute meth as alleged in Counts 1 and 2. Counts 3 and 4 will also involve overlapping evidence as to Defendant's status in the United States. Joinder of all counts is therefore proper under Rule 8.

### B.  Prejudice does not require severance of counts under Rule 14

Even if joinder is proper under Rule 8, a court may order separate trials if the joinder of

offenses appears to prejudice a defendant. Fed. R. Crim. P. 14(a).  The decision whether to grant or deny severance is within the discretion of the trial court.  *United States v. Martin*, 18 F.3d 1515, 1517 (10th Cir. 1994). The defendant bears a heavy burden of showing real prejudice in his case sufficient to warrant severance. *Id.* at 1518. To establish real prejudice, the defendant must show that the prejudice he will suffer outweighs the expense and inconvenience of separate trials. *Id.* The court should consider other remedial measures that will minimize the risk of prejudice.  *See United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989). Limiting instructions often will cure any risk of prejudice. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993). Nevertheless, when joinder is based on the similar character of the offenses, prejudice to the defendant is more likely because proof of one crime may tend to corroborate the commission of the other crime in violation of the evidentiary rules against evidence of propensity to commit crime. *United States v. Muniz*, 1 F.3d 1018, 1023 (10th Cir. 1993).

Defendant first argues that he will be prejudiced by a joint trial because he wishes to testify regarding his version of events as to Counts 1 and 4, but refrain from testifying as to Counts 2 and 3. Def.'s Reply 2, ECF No. 71. As to Count 1, Defendant argues that the paid confidential informant has significant credibility issues and is the only witness other than Defendant who can testify as to what happened in the vehicle during the alleged transaction. Defendant wants to testify as to "his version of the events and as to the state of the informant." With respect to Count 4, Defendant intends to testify as to his version of events, which he says is "in direct opposition" to the allegations of his estranged ex-girlfriend who was upset because she discovered he was cheating on her. *Id.* at 3. He contends that denying his motion to sever will result in either a violation of his Sixth Amendment right to testify and present a defense as to Counts 1 and 4, or his Fifth Amendment right to refrain from testifying as to Counts 2 and 3.

Under Tenth Circuit law, "no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." *Martin*, 18 F.3d at 1519. The defendant must provide enough information to satisfy the court that the purported prejudice is "genuine" and to enable it to intelligently weigh considerations of judicial economy against defendant's interest in having a free choice with respect to testifying. *Id.* (quoting *United States v. Valentine*, 706 F.2d 282, 291 (10th Cir. 1982)). "If a defendant's desire not to testify on a particular count, without more, amounted to a compelling need not to testify, then required severance would be the rule, and not the exception." *United States v. Jones*, 530 F.3d 1292, 1301 (10th Cir. 2008). Instead, a defendant should "show the specific testimony he will present about one offense, and his specific reasons for not testifying about others, to justify severance." *United States v. Hernandez*, 829 F.2d 988, 991 (10th Cir. 1987) (quoting *United States v. Bronco*, 597 F.2d 1300, 1303 (9th Cir. 1979)).

Defendant has not made a convincing showing that he has important testimony to give as to Counts 1 and 4 or that he has a strong need to refrain from testifying as to Counts 2 and 3. Nor has he shown that he will present very separate defenses. Stating that he wishes to testify to his version of events, without showing the specific testimony he will present about Counts 1 and 4 and his specific reasons for not testifying about others, is not enough to justify severance. *Cf. United States v. Jones*, 530 F.3d 1292, 1301 (10th Cir. 2008) (concluding that court did not abuse its discretion in denying severance of counts where defendant's stated desire to force government to meet its burden as to bank fraud and conspiracy counts did not establish her strong need to refrain from testifying as to those counts, noting absence of discussion of evidence that government might introduce if she chose to testify on bank fraud counts); *Martin*, 18 F.3d at

7

1519 (holding that proffered testimony that defendant did not possess firearm or carry it to use it for purpose of drug trafficking offense was not "important testimony" necessary to establish need for severance where evidence was convincing that he was sole occupant of vehicle containing drugs and pistol); *Hernandez*, 829 F.2d at 991 (holding that ambiguous references to defendant's proposed testimony were not enough to enable trial court to determine extent of possible prejudice to defendant and weigh it against judicial economy considerations).

Moreover, as the Government notes, the Court can prevent violation of Defendant's Sixth Amendment rights in a joint trial by limiting cross-examination only to topics discussed in the direct examination or by permitting him to testify to certain issues and assert his Fifth Amendment right as to others. Assertion of his Fifth Amendment privilege can be done at a bench conference to avoid any potential prejudice in allowing the jury hear the invocation of his rights.

Defendant next contends that "spillover" evidence from Counts 1 and 4 will prejudice the jury as to Counts 2 and 3 and to Counts 1 and 4 individually. He asserts that there is a great disparity in evidence as to the different counts, because some of the counts include direct testimony from law enforcement officers while others consist of direct testimony from paid informants and his ex-girlfriend. Defendant argues that the violent nature of the charge in Count 4 is highly inflammatory and will prejudice the jury as to the other counts.

As an initial matter, the Court remains unconvinced that there is a "great" disparity in evidence as to the different counts. Although in Count 1, CI-2 is the only other witness, besides Defendant, who could provide direct testimony as to what occurred in the vehicle while the transaction itself was occurring, the Government proffers that it will present evidence of phone calls between Defendant and CI-2 to arrange the purchase of meth and law enforcement

8

surveilled the car by aerial and ground units, which was recorded by video. The Government also proffers that it will present corroborating evidence as to Count 4 in the form of evidence of the shell casing found at the scene and of Ms. Gomez's subsequent identification of the handgun used to strike her from photographs taken from Defendant's cell phone. Based on the briefs, the Government does not appear to be attempting to strengthen a weak case by joining it with a strong case. Defendant has not established real prejudice based on a disparity of evidence between counts. *See United States v. Olsen*, 519 F.3d 1096, 1103 (10th Cir. 2008) ("We have repeatedly held that simply because the government's evidence was stronger on some counts than on others does not mandate severance under Rule 14.") (Internal quotations omitted).

Defendant additionally has not shown that separate trials would eliminate the prejudice from the evidence supporting the separate counts. Much of the evidence proffered by the Government to support Count 1 would be admissible against Defendant in a separate trial of Counts 2 and 3 under Rule 404(b), and vice versa, to show intent or plan, regardless of severance. *See United States v. Presley*, 24 F. App'x 12, 14 (2d Cir. Oct. 11, 2001) (holding that court did not abuse its discretion in admitting Rule 404(b) evidence of drug sale and conviction that occurred subsequent to charged offense of possession of larger quantities of drugs because evidence was relevant to show accused's intent to sell drugs)[1]; *United States v. Martinez*, 938 F.2d 1078, 1082-83 (10th Cir. 1991) (finding no abuse of discretion in admitting evidence of firearms, large sums of cash, scales, and uncharged quantities of illegal drugs seized in stash house defendant briefly visited because items are tools of drug trade and are probative of accused's participation in drug distribution business); *United States v. Cuch*, 842 F.2d 1173, 1175-76 (10th Cir. 1988) (evidence of other acts may be admissible to show knowledge, motive, or intent of defendant, so long as the evidence is not introduced for impermissible purpose or

---

[1] The Court cites this and other unpublished opinions for their persuasive value. *See* Fed. R. App. P. 32.1(a).

undue prejudice is shown).

Much of the evidence surrounding the event charged in Count 4 is also relevant to Defendant's drug-trafficking practices and his intent to distribute meth. For example, in the search of the residence in Counts 2 and 3, officers uncovered cell phone photographs of various weapons, including the handgun Ms. Gomez identified as the one Defendant possessed in Count 4. Ms. Gomez will testify concerning Defendant's possession of the weapon when transacting illegal drug deals on November 10, 2014, and to the location of Defendant's meth source, all of which is relevant to the intent to distribute requirement. *See Martinez*, 938 F.2d at 1084-85 (upholding admission of seized firearms from stash house under Rule 403 as relevant to charged drug distribution offense because firearms are necessary tools to facilitate drug trade). Severing therefore would not eliminate entirely the purported prejudice.

Although the Court recognizes that the more violent nature of how Defendant allegedly possessed and used the firearm in Count 4 could leave a negative impression on the jury, the Tenth Circuit has "been reluctant to find prejudice where 'the relationship of the charges [grows] out of the defendant's own conduct.'" *Olsen*, 519 F.3d at 1103 (quoting *Valentine*, 706 F.2d at 290). The alleged evidence of Defendant's discharge of the firearm is relevant to Defendant's possession of the firearm in Count 4. The evidence that a deputy retrieved a shell casing from the scene helps corroborate Ms. Gomez's testimony. Once again, Defendant's alleged possession of the firearm on November 10, 2014, is relevant to the intent element in Counts 1 and 2 because of the proffered evidence that Defendant possessed the firearm as a tool of the drug trade. The Court can issue appropriate limiting instructions to reduce the potential prejudice by admonishing the jury to consider the evidence for appropriate purposes only, and that Defendant is not on trial for any domestic violence offense. *See id.* (affirming court's denial of severance of

three perjury counts related to defendant having raped or beaten women, because relationship of charges grew out of defendant's own conduct, use of limiting instructions reduced potential prejudice, and judicial efficiency supported one trial). The Court may also limit the quantity of evidence pertaining to the violence against Ms. Gomez to avoid any unfair prejudice.

Although related for purposes of Rule 8(b), the counts are sufficiently separate and distinct that the overlapping evidence at trial will not be too confusing for a jury to separate. There are significant overlapping witnesses and evidence. The duplication of witnesses and evidence attendant with holding separate trials creates an inconvenience and inefficient use of judicial resources and time. For all the foregoing reasons, Defendant has not met his burden to show "real" prejudice in this case or to overcome the public interest in avoiding unnecessary duplication, expense, and assuring a fair and speedy trial. *Cf. United States v. Adams*, 418 F. App'x 688, *2-3 (10th Cir. Mar. 24, 2011) (holding that district court did not abuse its discretion in denying defendant's motions to sever because extensive evidence would have been admissible against defendant under Rule 404(b) to show intent or plan regardless of severance, and presenting same evidence and witnesses in two separate trials was inefficient use of judicial resources).

**IT IS THEREFORE ORDERED** that Defendant Victor Hernandez-Pena's Motion for Severance of Counts (**ECF No. 55**) is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**